UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America    :
                            :
        v.                  :       File No. 1:02-CR-120-01
                            :
Kevin C. Singer             :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 48, 63, 64 and 65)

Petitioner Kevin Singer, proceeding *pro se* and *in forma pauperis*, has filed a motion to vacate, set aside, or correct his sentence pursuant to the provisions of 28 U.S.C. § 2255. In his motion, Singer argues, inter alia, that his attorney failed to file an appeal after sentencing. He also claims that his attorney failed to obtain state court documents that would have called into question the credibility of key witnesses. Singer next contests the terms of his supervised release. Singer's challenge to his sentence may also be construed as asserting a claim under Blakely v. Washington, 124 S. Ct. 2531 (2004).

The government has opposed Singer's motion, and has submitted an affidavit from Singer's attorney. (Papers 55 and 56). The government has moved separately for dismissal

of the petition as moot on the ground that Singer has been released from prison.  (Paper 65).  Also pending before the Court are Singer's motions for the Court to reconsider his motion for immediate release (Paper 63), and to amend his petition (Paper 64).  For the reasons set forth below, Singer's motion for reconsideration and motion to amend are DENIED.  Further, I recommend that the government's motion to dismiss for mootness be DENIED, and that Singer's § 2255 motion also be DENIED.

<u>Factual Background</u>

On September 5, 2002, a grand jury returned a four-count indictment charging Singer with making threats against his wife and her parents.  Singer was arrested and released on conditions, but violated the terms of those conditions and was eventually detained.  The government has alleged that, both while on release and during his incarceration, Singer continued to threaten his wife, her parents and his wife's attorney.  Accordingly, on April 10, 2003, a grand jury returned an eleven-count indictment charging Singer with additional threats against his wife and/or her parents.

2

On July 18, 2003, Singer entered a guilty plea to the second count of the superseding indictment.  Singer was ultimately convicted on one count of making threatening communications in violation of 18 U.S.C. § 875(c), and was sentenced to 27 months in prison to be followed by three years of supervised release.

### Discussion

Section 2255 is intended to remedy fundamental defects in a criminal prosecution.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  A court may grant relief under § 2255 only for constitutional errors, lack of jurisdiction or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice. See Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996).  The Supreme Court has defined a miscarriage of justice as a claim of actual innocence.  See United States v. Olano, 507 U.S. 725, 736 (1993).  Absent exceptional circumstances such as a miscarriage of justice, nonconstitutional or nonjurisdictional questions are generally foreclosed to a § 2255 petitioner if not raised on direct appeal.  See Brennan v. United States, 867 F.2d 111,

3

120 (2d Cir. 1989).  Ineffective assistance of counsel claims are, however, generally excepted from this cause and prejudice requirement and may be brought for the first time in a § 2255 motion.  See Massaro v. United States, 538 U.S. 500, 504 (2003).

I.  Mootness

The first issue the Court must address is whether or not Singer's release from prison renders his § 2255 motion moot.  The government informs the Court that Singer was released from prison on February 23, 2005, and argues that his release deprives the court of subject matter jurisdiction.  (Paper 65 at 2).  As noted above, Singer's sentence included an extended term of supervised release following his incarceration.

A case becomes moot when it no longer satisfies the case-or-controversy requirement of Article III, section 2, of the Constitution.  See Spencer v. Kemna, 523 U.S. 1, 7 (1998).  The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties "continue to have a personal stake in the outcome of the lawsuit."  Id. (quotations omitted).  "This means that .

4

. . the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" <u>Id.</u> (quoting <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 477 (1990)).

Here, Singer has not concluded his sentence. Indeed, he is just beginning the first of three years of supervise release. Furthermore, Singer is challenging not only the length of his sentence, but the terms of his supervised relief. If successful, Singer could have his sentence both reduced and altered so that the conditions are less restrictive. Consequently, Singer still has "a personal stake in the outcome," petition is not moot, and the government's motion to dismiss the petition on this ground (Paper 65) should be DENIED. <u>See United States v. Verdin</u>, 243 F.3d 1174, 1178-79 (9th Cir. 2001); <u>Dawson v. Scott</u>, 50 F.3d 884, 886 n.2 (11th Cir. 1995).

II. <u>Ineffective Assistance of Counsel</u>

Singer claims that he was denied effective assistance of counsel in that his attorney failed to file an appeal "after the Defendant asked his counsel to do so at the

5

sentencing hearing and, again, a few days after that hearing." (Paper 48, Attachment A at 1). Singer also claims that counsel "failed to obtain documents and transcripts from underlying cases in the State of Vermont Courts . . . which clearly demonstrates [sic] the perjurious statements made, and the fraudulent acts performed by the alleged victims." <u>Id.</u>

"[T]he proper standard for attorney performance is that of reasonably effective assistance." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. <u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986). Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. See <u>Hernandez v. United States</u>, 202 F.3d 486, 488 (2d Cir. 2000) (citing <u>Strickland</u>, 466 U.S. at 687-691).

To satisfy the first prong, the petitioner must show

6

that counsel's representation fell below an objective standard of reasonableness.  More specifically, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and the deficient performance so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result."  Strickland, 466 U.S. at 687; see also United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).  In conducting the ineffective assistance inquiry, a court must maintain a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689.  The court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  See id. at 690.  In evaluating counsel's performance, the court is to look to "an objective standard of reasonableness . . . under prevailing professional norms" and apply this standard in light of all the circumstances in the case.  Id. at 688, 690.

In evaluating the prejudice component of <u>Strickland</u>, a court must determine whether, absent counsel's error, it is reasonably probable that the outcome of the proceeding would have been different.  <u>See</u> <u>Mayo v. Henderson</u>, 13 F.3d 528, 534 (2d Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Strickland</u>, 466 U.S. at 703.

A.   Failure to File Appeal

In response to Singer's claim that counsel failed to file an appeal, the government has submitted the affidavit of Singer's attorney, Robert McDowell, Esq.  In his affidavit, McDowell states:

> One of Mr. Singer's initial reactions to the sentence he received on December 12, 2003, was to file an appeal.  I advised him not to appeal his sentence for a number of reasons.  I explained certain matters pertaining to appeals such as timetables for perfecting an appeal, standard review for sentencing issues, and what could happen upon remand to the district court.  It was my understanding after talking to him shortly after a December 15th telephone conversation that he had decided against an appeal.

The Supreme Court has held that the <u>Strickland</u> standard applies in cases where counsel allegedly failed to file an appeal.  <u>See</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000);

8

Sarroca v. United States, 250 F.3d 785, 787 (2d Cir. 2001).
As to the first prong of Strickland, "a lawyer who
disregards specific instructions from the defendant to file
a notice of appeal acts in a manner that is professionally
unreasonable." Flores-Ortega, 528 U.S. at 477.  With
respect to the prejudice prong of Strickland, a "petitioner
has also shown prejudice when he shows that he would have
taken an appeal, such as when he asked his counsel to file
the appeal; he need not make a showing of the merits of the
appeal." Garcia v. United States, 278 F.3d 134, 137 (2d
Cir. 2002) (citing Flores-Ortega, 528 U.S. at 484); see also
McHale v. United States, 175 F.3d 115, 119 (2d Cir. 1999)
("[I]t is clear that the petitioner need not demonstrate
that, but for the ineffectiveness of counsel, such an appeal
would have succeeded or even would have merit.").

Generally, a section 2255 petition should not be
dismissed without conducting an evidentiary hearing "unless
the motion and the files and records of the case
conclusively show that the petitioner is entitled to no
relief." 28 U.S.C. § 2255.  Section 2255, however, leaves
district courts with sufficient discretion "to exercise

their common sense." Machibroda v. United States, 368 U.S. 487, 495 (1962). No hearing is required "where [petitioner's] allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970); see also Smith v. United States, 2004 WL 1403305, at *3 (S.D.N.Y. June 22, 2004).

Here, Singer's claim consists of a single sentence in which he asserts that he asked his attorney to appeal at sentencing, and again "a few days after that hearing." This claim is directly contradicted by McDowell's affidavit, stating that Singer initially wanted to appeal, then decided against appealing. The government further claims that McDowell advised his client after sentencing that, if an appeal was taken and succeeded, at re-sentencing the government could reargue its motion for an upward departure. (Paper 56 at 3). While this specific advice is not a part of McDowell's affidavit, such advice would have been reasonable in light of the Court's statement that the upward departure motion was "a very, very close case," and that while "inclined to upwardly depart . . . even more than what

10

the Goverment is asking for," the Court chose not to do so.

(Sentencing Transcript at 31).  The government has also

informed the Court that if the current proceeding results in

re-sentencing, it will argue for an upward departure with

new evidence supporting its motion.  (Paper 56 at 6).

The government also urges the Court to view this

factual dispute in light of "the totality of circumstances."

(Paper 56 at 4).  That totality, the government argues,

consists largely of Singer's pattern of blaming others for

his own decisions.  For example, the government notes that

at sentencing, the petitioner blamed his former

mother-in-law for the break up of his marriage, (Sentencing

Transcript at 17) and the Montpelier Police for not checking

on his daughter (id. at 18).  The Court also noted this

pattern at sentencing, referring to a letter submitted by

Singer to the Court as largely "trying to explain why others

were at fault or caused your problems."  Id.

Although contradictory statements by a lawyer and his

client might require a hearing, in this case a hearing is

unnecessary to determine credibility, as the evidence before

the Court weighs in favor of counsel's recollection and

11

against Singer's claim that he demanded an appeal.  The
Court very nearly granted an upward departure at sentencing.
At re-sentencing, the government would have likely argued
again for an upward departure, and the outcome of that
argument was by no means certain.  Furthermore, the
government has persuasively shown that Singer has a pattern
of blaming others for consequences of his own actions.
Finally, Singer's claim lacks factual support.  In his
single-sentence allegation, Singer gives few details about
the context of his request for an appeal, or the reasoning
behind that request.  In contrast, McDowell references a
specific conversation on a specific date, after which he
concluded that Singer "had decided against an appeal."
Significantly, Singer has addressed several other issues in
recent filings, but has not once directly challenged
McDowell's recollection.  The Court should, therefore,
conclude that McDowell's affidavit is the more credible of
the two, and DENY Singer's claim of ineffective assistance
based upon failure to file a direct appeal.  <u>See</u>, <u>e.g.</u>,
<u>Smith v. United States</u>, 2004 WL 1403305, at *3 (S.D.N.Y.
June 22, 2004) (dismissing § 2255 petition where petitioner

12

failed to contradict affidavit of former counsel).

III.  <u>Failure to Obtain State Court Documents</u>

Singer also claims that McDowell was constitutionally ineffective because he failed to "obtain documents and transcripts from underlying cases in the State of Vermont courts."  These documents allegedly pertained to proceedings resulting in a protective order against Singer, and modifications to that order.  The order was obtained by Singer's ex-wife, Heather Holman.  Singer claims that Holman "sought the protective order on fraudulent pretense, committed perjury in her original petition for the order, and continued to commit perjury on subsequent revisions of the order."  He also states that the protective order was used to enhance his federal sentence by two offense levels.

There is no indication in the record that Singer ever challenged the protective order on appeal in state court. Moreover, he never raised the issue of his ex-wife's state court testimony at his change of plea or sentencing hearings.  While Singer might argue now that this failure constituted ineffective assistance of counsel, Singer declared at his change of plea hearing that he was

13

"absolutely" satisfied with his lawyer's representation and advice.[1]  (Change of Plea Transcript at 13).  Singer also argues that contesting Holman's state court testimony would have disqualified her "as a key witness in this case," and should have entitled him to "disclosure of the grand jury proceedings in this case."  These allegations ignore the fact that Singer pleaded guilty, thereby waiving his right to call witnesses and have a trial.  Further, with respect to the grand jury records, the government informs the Court that "[w]ithout disclosing the contents of the grand jury proceedings . . . Ms. Holman did not testify before the grand jury."  (Paper 55 at 10 n.1).

Finally, Singer claims that his attorney should have offered the state court documents "as mitigating evidence." Prior to his sentencing in this case, Singer violated the terms of his release on several occasions by having contact with Holman and her family.  These contacts also violated the state court protective order.  It is difficult to

---

[1]  Notwithstanding this statement at sentencing, Singer now claims that he urged his attorney on numerous occasions to raise the issue of the protective order's validity. (Paper 63 at 2).

14

understand how highlighting the state protective order would be "mitigating evidence" in light of these repeated violations.

The government also argues that introduction of this evidence as a "mitigating" factor would have allowed it "to present the aggravating factors from the same case, including, but not limited to, the petitioner's harassment and threatening behavior toward Ms. Holman's lawyers and the Family Court personnel." (Paper 55 at 9). In sum, the evidence suggests that the introduction of additional records from the state court proceedings would likely have done Singer more harm than good. Therefore, the fact that counsel did not obtain these documents should not be deemed ineffective assistance.

IV. <u>Challenges To Supervised Release</u>

Singer next challenges several aspects of his supervised release, including the provision that bars him from contacting his ex-wife. Singer claims that this provision not only interferes with his ability to see his child, but also interferes with his professional life, as he and his ex-wife allegedly work in the same "general

15

profession."  Singer also contends that the provision requiring him to submit to warrantless searches violates his right to privacy; that probation officers are not qualified to determine his mental health needs; that restriction on his travel is detrimental to his work as an offshore surveyor; and that the conditions of his supervision are solely punitive.

The government initially responded that Singer's complaints were premature, since his supervised release had not yet commenced.  As set forth above, Singer was recently released from prison, and his claims are therefore ripe. The government also contends that Singer's conditions were within the broad discretion of the Court, and that some elements such as restrictions on travel and access to mental health programs "are specifically envisioned by the Guidelines."  (Paper 55 at 11, citing U.S.S.G. §§ 5D1.3(c), 5D1.3(d)(4) and (5)).

The government also concedes that the Court considered at sentencing whether the "no contact" provision was overly restrictive, and allowed that this Court's sentence might be revisited if a change in the state court protective order

"comes to fruition." (Sentencing Transcript at 39).   In

that event, the Court stated that "either the probation

officer or you or somebody can petition the Court to have

the condition revised."  Id.  To date, Singer has not shown

that the state court order barring him from contacting his

ex-wife has been changed since his sentencing.  If that

order is still in effect, a change to this Court's order

would have no impact.

    Singer's remaining challenges to his supervised release

are without merit.  With respect to his objection to

warrantless searches, his argument disregards the fact that

as a person serving a federal term of supervised release,

his right to privacy is "necessarily and significantly

diminished."  See United States v. Reyes, 283 F.3d 446, 457

(2d Cir. 2002).  Moreover, warrantless searches of persons

on supervised release are often necessary for probation

personnel to carry out their duties of observation,

supervision and investigation.  Id. at 459 (holding that

home visits by probation personnel "at any time" are

necessary to monitor the "'conduct and condition'" of the

supervisee).  Therefore, the Court need not revisit the

issue of warrantless searches by probation personnel on the
ground that such searches violate Singer's right to privacy.

The role of the probation officer in determining
Singer's mental health treatment is equally lawful.
Probation officers work "at the cross-section of social
work, law enforcement, and penology." Id. at 455. "During
the term of supervision, the probation officer is charged
with identifying supervision issues and planning an
intervention strategy to address those issues with the
offender.  These strategies run the gamut from arranging
referrals for substance abuse treatment to field contacts."
Id. at 457 (citations omitted).  Given a probations
officer's wide range of responsibilities in developing an
"intervention strategy," approving participation in a mental
health program is well within that officer's legal role.

Singer further argues that the special conditions of
supervision, including no contact with his victims,
warrantless searches, and mandated participation in
treatment programs are merely punitive and do "nothing to
afford deterrence to criminal conduct or to protect the
public from further crime."  Singer also objects to certain

18

standard conditions, such as the provision barring him from leaving Vermont without permission, and the requirement that he report regularly to his probation officer.  Singer's arguments ignore that fact that he repeatedly violated the state court protective order and this Court's orders barring him from contacting his victims.  Singer's victims have clearly needed Court protection in the past, and unless Singer is able to engage in successful rehabilitation, he may continue to be a danger both to the Holman family and the public.  Moreover, the standard conditions allow his probation officer to, inter alia, monitor his progress and adjust his program as necessary.  His efforts to have these conditions stricken are, therefore, without merit and should be DENIED.

V.   Challenges to Sentence Calculation

     Singer's final argument is that the calculation of his sentence was unconstitutional.  Most of his claims are based upon the contention that the Court considered facts that were not admitted and not found by a jury.  Although Singer cites no case law in support of his argument, the argument echoes the holdings in the recent Supreme Court decisions in

<u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and <u>United</u>
<u>States v. Booker</u>, 125 S. Ct. 738 (2005).

Singer was sentenced in 2003, prior to either the
<u>Blakely</u> or <u>Booker</u> decisions.  Because <u>Blakely</u> did not
announce a new rule of constitutional law, and did not hold
that it applied retroactively on collateral review, courts
in this circuit have declined to apply <u>Blakely</u>
retroactively.  <u>See</u> <u>Carmona v. United States</u>, 390 F.3d 200
(2d Cir. 2004) (holding that <u>Blakely</u> was not retroactive for
purposes of second and successive habeas petition); <u>Nnebe v.</u>
<u>United States</u>, 2005 WL 427534, at *9 (S.D.N.Y. Feb. 22,
2005).  Similarly, the Second Circuit has held that <u>Booker</u>
"is not retroactive, i.e., it does not apply to cases on
collateral review where the defendant's conviction was final
as of January 12, 2005, the date that Booker was issued."
<u>Guzman v. United States</u>, 2005 WL 803214, at *4 (2d Cir.
April 8, 2005).

Singer is challenging a sentence that became final
before the rules of <u>Blakely</u> and <u>Booker</u> were announced.
Because those rules are not retroactive, Singer's claim that
the facts supporting his sentencing enhancements needed to

be either admitted or proven to a jury should be DENIED.

Singer also claims that he was denied a downward departure for acceptance of responsibility "based principally on allegations made by a 'confidential informant' and by Ms. Holman's divorce atttorney . . . ." The record, however, shows clearly that the Court denied the request for a downward departure because of Singer's repeated violations of "no contact" provision of his conditions of release.  See Sentencing Transcript at 31. This argument is, therefore, without merit.

Finally, Singer argues that he "should have enjoyed an additional four-point downward departure . . . when only one threat was communicated and no action was taken to carry out that threat."  The government properly argues in response that (1) the Court was entitled to review relevant conduct beyond the precise conduct charged, and (2) that because Singer's threats took place in violation of a standing protection order, a reduction under § 2A6.1(b)(5) of the sentencing guidelines could not have been applied.  For these reasons, the Court should DENY Singer's request for review of his sentence on this ground.

VI.   Remaining Motions

     In addition to Singer's § 2255 motion, the Court has

pending before it a motion to amend the § 2255 motion.   The

proposed amendment states two grounds for relief.   First,

Singer claims prosecutorial misconduct, alleging that

members of the U.S. Attorney's office have failed to take

appropriate action with respect to the alleged criminal

wrongdoing of Singer's victims.   That wrongdoing allegedly

includes Heather Holman's perjury before the grand jury.

Singer also claims that Holman's statements have been the

basis for his "wrongful, selective prosecution."   (Paper 64,

proposed amendment at 4).

     As noted above, Holman did not testify before the grand

jury.   Indeed, the government informs the Court that "the

defendant's admitted conduct provided the basis for the

indictment."   (Paper 65 at 1 n.1).   With respect to Singer's

claim of selective prosecution, to establish a claim for

selective prosecution, he must show two things: (1) that,

while others similarly situated have not generally been

proceeded against because of conduct of the type forming the

basis of the charge against him, he has been singled out for

22

prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.   See <u>United States v. Berrios</u>, 501 F.2d 1207, 1211 (2d Cir. 1974) (citations omitted); <u>see also United States v. Fares</u>, 978 F.2d 52, 59 (2d Cir. 1992).   Further, the Supreme Court has held that prosecutors retain broad discretion in choosing whom to prosecute because "the decision to prosecute is particularly ill-suited to judicial review."   <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985).

Here, Singer has failed to meet his burden.   He has made no attempt to show that others similarly situated have not been prosecuted, and alleges no facts to support a charge of "impermissible considerations" by prosecutors. His claim of prosecutorial misconduct is, therefore, without merit, and amendment of his motion to add such an allegation would be futile.

Singer's second proposed amendment asserts that this Court has no jurisdiction over his case, as the case "stems

directly from a domestic case initiated in the State of Vermont." (Paper 64).  This argument is clearly frivolous. The government charged, and Singer pleaded guilty to, a crime under federal law.  While the facts underlying his crime may have arisen out of a domestic dispute, Singer nonetheless violated federal law, and jurisdiction is appropriate in this case.

Because Singer's proposed amendments to his § 2255 motion would be frivolous, his motion to amend (Paper 64) is DENIED.  See Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002) (court may deny that leave where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive).  Singer has also filed a motion to reconsider the issue of his immediate release.  (Paper 63). Since Singer is no longer incarcerated, this motion is DENIED as moot.  To the extent that Singer's motion to reconsider raises challenges to his supervised release, those arguments have been considered and the motion is DENIED for reasons set forth above.

<u>Conclusion</u>

For the reasons set forth above, Singer's motion for

24

reconsideration (Paper 63) and motion to amend (Paper 64) are DENIED.  Further, I recommend that the government's motion to dismiss for mootness (Paper 65) be DENIED, and that Singer's § 2255 motion (Paper 48) also be DENIED.

Dated at Burlington, in the District of Vermont, this 27th day of April, 2005.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).